IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| TELETIA R. TAYLOR, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:11-CV-471 |
| OAK FOREST HEALTH AND REHABILITATION, LLC, et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Teletia R. Taylor, brought this suit to obtain health insurance benefits pursuant to a policy issued to her employer. Because Ms. Taylor has interfered with the discovery process to an outrageous extent and has repeatedly failed to comply with court orders, the Court will dismiss her case as a sanction. In the alternative, the case must be dismissed at summary judgment because she has provided no evidence that she exhausted her administrative remedies as required by ERISA.

### I. Defendants' motion for sanctions

"The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders." *Ballard v. Carlson,* 882 F.2d 93, 95 (4th Cir.1989) (citing Fed. R. Civ. P. 41(b)). In this case, Ms. Taylor refused to produce complete information about her medical bills and records and refused to answer questions at her deposition, despite court orders and even though the Magistrate

Judge warned her many times about the potential for sanctions if she failed to comply. Her refusal to cooperate in the discovery process has prejudiced the defendants and was willful. Other sanctions have proven to be ineffective, leaving dismissal as the only reasonable option.

During the course of discovery, the defendants filed two separate motions to compel: one directed towards Ms. Taylor's inadequate written discovery responses, (Doc. 56), and one directed towards her failure to appear for her deposition. (Docs. 61, 66.) At a hearing on these motions, Magistrate Judge Auld granted in part and denied in part the motion to compel directed towards the discovery responses, granted the motion to compel her deposition, and awarded costs. *See* Minute Entry for proceedings held on April 11, 2014. In its April 11, 2014, Text Order, the Court ordered Ms. Taylor to serve supplemental discovery responses by June 12, 2014, and to submit to a deposition by May 10, 2014. The Court directed and warned:

> Plaintiff may state any objection to any question in a non-argumentative manner, but, after doing so, must answer the question, unless the objection relates to an assertion of a valid privilege. Failure by Plaintiff to comply with any of the directives of the Court regarding either written discovery or her deposition will result in the consideration of case dispositive sanctions. . . .

April 11, 2014, Text Order.

On April 18, 2014, Ms. Taylor filed a "motion for reconsideration." (Doc. 68.) The Court denied that motion by Text Order dated April 22, 2014 because Ms. Taylor simply attempted to re-hash arguments made at the April 11 hearing. Ms. Taylor filed another motion on April 22, 2014 entitled "Plaintiff's Motion for an Entry of Order to

2

squash [sic] the Defendants improper Deposition, interrogatories and request for admission: all pending and past discoveries actions and for a protective order and an entry of order for relief." (Doc. 69.) On April 23, 2014, the Court entered a Text Order denying that motion, and warned Ms. Taylor that "[i]f Plaintiff continues to make redundant filings of this sort, the Court will have to consider appropriate sanctions."[1] Ms. Taylor filed a third motion on April 24, 2014 entitled "Plaintiff's Notice of Motion for the Court to Give Clarification Regarding Deposition in Light of the Joint Rule 26(f) Report in the October 28, 2013 pre-Trial conference with Mag. Judge Patrick Auld." (Doc. 70.) The Court provided clarification, again warning Ms. Taylor that "[a]s the Court previously cautioned, failure by Plaintiff to cooperate in the taking of her deposition in the manner ordered by the Court will result in the consideration of case-dispositive sanctions." Text Order entered April 25, 2014.

On June 2, 2014, the Court awarded the defendants $6,250.87 in reasonable expenses incurred as a result of Ms. Taylor's failure to appear for her deposition. (Doc. 77.) Ms. Taylor filed a motion to extend the time of payment, (Doc. 78), which the Court allowed by Text Order dated June 17, 2014. As of the date of the pending motion, Ms. Taylor had not made paid anything towards this award. (Doc. 88 at 15.)

On April 29, 2014, the defendants deposed Ms. Taylor. The deposition lasted for over eight hours. Despite the Magistrate Judge's direction to her that she must answer all questions unless she could assert a "valid privilege" and that all objections should be

---

[1] This Order was reviewed by the District Court after Ms. Taylor objected to the Magistrate Judge's decision. The Order was affirmed and adopted. (Doc. 79.)

stated in "a non-argumentative manner," see April 11, 2014 Text Order, Ms. Taylor refused to answer many, many questions and repeatedly argued with counsel. She asserted privilege objections that were completely without basis or merit. She routinely answered that she could not remember answers to questions involving matters of an ordinary nature, forcing counsel to ask more questions in an effort to obtain information. She gave evasive and long-winded answers to simple questions. By way of example only:

- In the first few minutes of her deposition, she was asked if she had ever testified in court before. In response, she testified, "Not to my knowledge," forcing counsel to ask more questions to determine the answer to what was a very simple question well within Ms. Taylor's knowledge. (Doc. 88-1 at 11.) [2]
- She denied knowing the addresses of her sisters, (Doc. 88-1 at 53-54), and refused to provide contact information for them. (Doc. 88-1 at 54-55.) She even argued with counsel at length about the simple question of how many sisters she had before eventually answering. (Doc. 88-1 at 56-59.)
- She asserted that the name of her spouse's employer and information about current health insurance was privileged. (Doc. 88-1 at 159.) When asked what the privilege was, she replied, "Valid privilege reason," and when asked to explain it, she essentially objected to relevance: "my husband have nothing to do in this case. . . [H]is health insurance, that's totally out of scope." *Id.* at

---

[2] All page numbers reference the page number appended by the CM-ECF system.

160. This happened repeatedly about a variety of topics. (Doc. 88-1 at *inter alia*, 55, 167, 168, 192, 194.)

- She denied remembering the name of the attorney who helped her attempt to collect on a default judgment against the driver of the car who caused the injuries that led to the medical care at issue. (Doc. 88-1 at 13.)

- She could not remember the name of the attorney helping her with her social security disability application, (Doc. 88-1 at 16), nor could she remember the city where his office is located. (Doc. 88-1 at 20-21.)

- Counsel had to ask three times whether Ms. Taylor had applied for any jobs since the accident before getting an answer. (Doc. 88-1 at 15.) Other occasions where counsel had to ask repeatedly in order to get an answer may be found, *inter alia*, at Doc. 88-1 at 36-37, 43, 54-59, 125.

- Ms. Taylor said she could not remember where her husband was employed. (Doc. 88-1 at 27.)

- Ms. Taylor argued with counsel over whether she had to answer questions about when her husband left his employment with Douglas Battery, ultimately refusing to answer without asserting any privilege. (Doc. 88-1 at 27-28.) Once counsel pointed out the language of the court order requiring her to answer, she testified she couldn't remember when her husband stopped working for Douglas Battery; immediately thereafter, she objected again to a related question, forcing counsel to ask a second time. (Doc. 88-1 at 30-31.) This occurred over and over again on all sorts of topics, often with no answer ever

given to the questions despite patient efforts by counsel. (Doc. 88-1 at, *inter alia,* 32, 46-49, 63-64, 69-73, 99-102, 119-120, 134, 143-145.)

- She persisted in asking counsel questions rather than answering questions. (Doc. 88-1 at, *inter alia* 28-29, 47, 67, 69, 80, 99, 138, 274.)

- When asked if she had used the settlement from her lawsuit against the driver who caused her injuries to pay her medical bills, she gave a completely nonsensical and evasive answer: "Well, actually, if I had the money and if it – if it's in the duration of the time that I have the money and if there's a medical bill, if they write me to pay a medical bill from it, then, actually – whatever, it's not that – it's not that the money that would sit there. I have it, it's for medical bills because it's for me, for my situation." (Doc. 88-1 at 139.) She gave similar evasive non-answers throughout her deposition.

- Sometimes it took several questions simply to get an answer to the question of whether a particular signature was or was not her signature. (Doc. 88-1 at, *inter alia,* 66, 277.)

The Court finds and concludes that Ms. Taylor's conduct during the deposition violated the Court's April 11, 2014 Order.

On June 6, 2014, Ms. Taylor served supplemental responses to the Defendants' discovery requests. (Doc. 88-2.) These responses were inadequate, evasive and obstructive. For example, she maintained or added objections to many of the requests for admission and several interrogatories and requests for production, all despite the Court's order that she fully respond to the discovery requests. The answers she did provide were

6

incomplete and provided virtually no details. She did not provide the documents required by the Court's Order. The Court finds and concludes that she violated the Court's April 11 Order.

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order entered under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). The Rule identifies possible sanctions for such failure, ranging from striking pleadings, to financial penalties, to dismissing the action, to contempt. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

"[D]ismissal is not a sanction to be invoked lightly." *Ballard*, 882 F.2d at 95. Generally, before dismissing an action as a sanction, a court should consider all relevant factors, including: "(i) the degree of personal responsibility of the plaintiff; (ii) the amount of prejudice caused the defendant; (iii) the existence of a history of deliberately proceeding in a dilatory fashion; and (iv) the existence of a sanction less drastic than dismissal." *Id.* This is not a rigid test, and other factors are also appropriate to consider, such as whether a litigant has been previously warned about the consequences of failure to follow the court order, *id.* at, *inter alia*, 95-96; the need for deterrence, *e.g., National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642 (1976), and whether the non-complying party acted in good faith. *E.g., Wilson v. Volkswagen*, 561 F.2d 494, 503-505 (4th Cir. 1977.)

In this case, Ms. Taylor represents herself and bears sole responsibility for her noncompliance. There is also a history of dilatory conduct; Ms. Taylor previously

7

refused to show up for a deposition and filed a series of repetitive and meritless motions in an attempt to avoid the Court's discovery orders. Stonewalling in discovery supports a finding of bad faith. *See Anderson v. Found. for Advancement, Educ. and Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir.1998.) Such a finding is well warranted here.

The Court warned Ms. Taylor on several occasions about the consequences of a failure to comply with the Order and the inappropriateness of redundant objections. *See* Text Orders entered April 11, 2014; April 23, 2014; April 25, 2014. At her deposition, defense counsel reminded Ms. Taylor of the terms of the Order compelling her to answer questions at the deposition many times and even showed her a copy of it, (Doc. 88-1 at, *inter alia,* 28-30), so it is clear that she had full knowledge of the terms of the Order.

The defendants have suffered significant prejudice. Ms. Taylor's failures to provide full and complete discovery responses and her failure to give non-argumentative and full deposition testimony are extensive. Much of her stonewalling centered on preventing the defendants from learning whether and by whom medical bills have been paid and what medical bills are still outstanding. Presumably, Ms. Taylor does not want her alleged damages to be reduced by the defendants' right to a set-off, subrogation or credit for those payments. That, however, is not an excuse for refusing to answer questions in the face of a court order. It also prejudices the defendants, as (1) they cannot determine the amount of supportable damages, (2) they cannot determine the full amount of set-off, subrogation or credit they are entitled to for payments already made, and (3) they cannot determine the claimed equitable harm to Ms. Taylor.

Ms. Taylor also repeatedly refused to provide contact or identifying information for people who might have knowledge of disputed facts in the case, thus interfering with the defendant's efforts to confirm or deny her story. (Doc. 88-2 at, *inter alia,* 20 and Doc. 88-1 at, *inter alia,* 57-60.) She refused to provide the names of her banks or credit card companies, all of which would assist the defendant in determining supportable damages. (Doc. 88-1 at 150-54.) She refused to identify her husband's current employer, even though she testified that she might have insurance through that employer, (Doc. 88-1 at, *inter alia,* 158-59), and refused to answer completely interrogatories about payment of medical bills. (Doc. 88-2 at, *inter alia,* 6.) This prejudiced the ability of the defendant to determine the potential future damages that she claims and possible additional set-offs or credits, especially those that may apply to her equitable ERISA claim.

She has not provided all of the medical records and bills that the defendants requested in discovery. At her deposition, she testified that she would not be producing any more documents because she had provided such extensive deposition testimony. (Doc. 88-1 at 172.) Later, she testified that she had not provided the documents because these materials were irrelevant and collecting them was overly burdensome. (Doc. 88-1 at pp. 216-17.) However, it seems more likely that she is trying to interfere with the defendants' ability to investigate whether they are entitled to a set-off, subrogation or credit for payments made by others, such as Medicaid.

Finally, there are no less drastic sanctions which would correct the problems Ms. Taylor has caused or which would result in compliance with ordinary rules of court and court orders. Her deposition in this case is so outrageous it can hardly be believed. Even

9

after eight hours of patient effort, the defendants did not obtain answers to many potentially relevant questions. Ms. Taylor has refused to produce clearly relevant medical bills and medical records in a case which concerns coverage for medical bills. After being ordered to produce the information, she has continued to argue about relevance while at the same time refusing to comply. She has been ordered to pay attorneys' fees as a sanction, which she has not paid and which she has testified she cannot afford to pay. She has been warned several times by the Court of the consequences of her behavior, and defense counsel reminded her several times during her deposition of the potential consequences of a refusal to answer questions. Her response to the sanctions motion shows no remorse and continues to reflect her obstinate belief that she does not have to comply with court orders.[3] Even giving her extra leeway because of her *pro se* status, her conduct is inexcusable.

"Individual parties cannot be allowed to ignore court orders without suffering consequences if the judicial system is to continue functioning." *Green v. John Chatillon & Sons*, 188 F.R.D. 422, 425 (M.D.N.C. 1998), *aff'd,* 165 F.3d 18 (4th Cir. 1998). To ignore such a "bold challenge" as Ms. Taylor has made in this case would "encourage other litigants to flirt with similar misconduct." *Mutual Fed. Sav. And Loan Ass'n v.*

---

[3] Ms. Taylor says that "to the best of her ability" she supplemented her discovery. (Doc. 106 at 2.) This claim is either false or intentionally obtuse. Rather than defend her own conduct at her deposition, she makes unwarranted attacks on defense counsel, claims all the defense documents are false, and blames the length of the deposition for causing her objections. (*See* Doc. 106.) She cites no cases supporting her frivolous "privilege" objections made during the deposition and seems to think that because the defendants' motion to dismiss was denied in part, she is entitled to win on those claims. *Id.* She continues to assert that she is entitled to recover on state law claims like fraudulent misrepresentation which have been dismissed twice. *Id.* at 14.

*Richards & Associates, Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). In these circumstances, "the camel's back has been broken." *Id.* In the exercise of its discretion, and to protect the litigation process and to promote respect for court orders, the Court concludes that dismissal is warranted.

## II. Defendants' Summary Judgment Motions

In the alternative, each defendant is entitled to summary judgment on the merits. While it appears that Ms. Taylor has come forward with no evidence to support any of her claims, the Court will limit itself to the exhaustion issue.

An ERISA plan participant must both pursue and exhaust plan remedies before gaining access to federal courts. *E.g., Gayle v. UPS*, 401 F.3d 222, 226 (4th Cir. 2005). It is undisputed that Ms. Taylor did not exhaust administrative remedies. She has come forward with insufficient evidence to establish that pursuing administrative appeals would have been futile, and she admitted that she received explanation of benefits information from United Healthcare that provided appeals information. (Doc. 88-1 at pp. 272-73.)

## III. Plaintiff's Dispositive Motion

Ms. Taylor has filed a "dispositive motion" seeking "Final Judgment." (Doc. 96.) She refers to "Rule 79(a)" which makes no sense, so the Court will treat the motion as a summary judgment motion. Ms. Taylor's motion is largely incoherent and in any event does not identify sufficient evidence to support her claims. Her argument that the defendants acted in bad faith during discovery is frivolous.

## IV. Plaintiff's Motion About Her Deposition

Ms. Taylor filed a motion which she named "Motion to Object Deposition Transcript and Request Documents." (Doc. 81.) While not completely clear, it appears Ms. Taylor is asking the court to "suppress" her own deposition testimony because the transcript is not accurate. She also asks the Court to require the court reporter to give her a copy of his "certificate" and to require defense counsel to "submit transcripts." While not completely clear, she apparently thinks that defense counsel took a separate stenographic transcript of the deposition and seems to say that she wants to look at counsel's notes from the deposition. (*See* Doc. 101.) She also asks the Court to order defense counsel to give her a copy of a document used at the deposition. (Doc. 102.)

Rule 32(d)(4) of the Federal Rules of Civil Procedure provides that "an objection to how the officer transcribed the testimony . . . is waived unless a motion to suppress is made promptly after the error or irregularity becomes known or, with reasonable diligence, could have been known." Ms. Taylor presents no examples in her motion of the alleged disparities in the transcription of her deposition. She was given an opportunity to review and make corrections to her testimony, which she in fact did. (Doc. 82-1.) Beyond those corrections, she is not entitled to suppress her own testimony. *See Harb v. UPS,* 3 Fed.R.Serv.3d 1023, 1985 WL 4850 (S.D.N.Y. Dec. 23, 1985) (denying motion to suppress); *see* Fed.R.Civ.P. 32(d)(4).

She can obtain a copy of the requested exhibit from the court reporter. Ms. Taylor is not entitled to opposing counsel's notes from the deposition, as those are attorney work product. E.g., *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981)(holding to force

"an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes.") This aspect of the motion is denied as frivolous.

For the reasons stated in this Opinion, it is **ORDERED** that:

1. The "Motion to Object Deposition Transcript and Request Documents," (Doc. 81), is **DENIED**.

2. The Motion for Summary Judgment by defendants Ardent Health and Rehabilitation, Beystone Health and Rehabilitation, Oak Forest Health and Rehabilitation, and Sanstone Health and Rehabilitation, (Doc. 83), is **GRANTED**.

3. The Motion to Dismiss by defendants Ardent Health and Rehabilitation, Beystone Health and Rehabilitation, Oak Forest Health and Rehabilitation, and Sanstone Health and Rehabilitation pursuant to Fed. R. Civ. P. 37 and 41, (Doc. 87), is **GRANTED**.

4. The Motion for Summary Judgment by United Healthcare Services, Inc., (Doc. 90), is **GRANTED**.

5. The Plaintiff's Dispositive Motion for Liabilities Settlement, (Doc. 96), is **DENIED**.

6. The Motion to Dismiss by United Healthcare Services, (Doc. 98), is **GRANTED**.

7. All other pending motions are **DENIED** as moot.

8. Because of the pattern of abusive motions filed by Ms. Taylor, the defendants need not file responses to any future motions filed by Ms. Taylor unless requested by the Court. The Clerk shall refer any such motions to the Court immediately upon filing.

9. Ms. Taylor is **WARNED** that further sanctions may imposed, including criminal contempt and limits upon her right to file future pleadings, should she violate Rule 11 of the Rules of Civil Procedure going forward.

10. Judgment will be entered consistent with this Order, as time permits.

This the 9th day of September, 2014.

_____
UNITED STATES DISTRICT JUDGE